IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RUSSELL STEWART, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No. 04-1200-SLR |
| ) | |
| STATE OF DELAWARE, DEPARTMENT OF ) | |
| PUBLIC SAFETY, and CAPITOL POLICE, ) | |
| ) | |
| Defendants. ) | |

R. Stokes Nolte, Esquire, Nolte & Associates, Wilmington, Delaware. Counsel for Plaintiff.

Patricia Davis Murphy, Esquire, Delaware Department of Justice, Wilmington, Delaware.

**MEMORANDUM OPINION**

Dated: September 29, 2006
Wilmington, Delaware

ROBINSON, Chief Judge

## I. INTRODUCTION

Plaintiff Russell Stewart, an African American male proceeding in forma pauperis, filed the action at bar against the State of Delaware, the Delaware Department of Public Safety, and the Delaware Capitol Police Department ("defendants") on August 26, 2004. (D.I. 2) Plaintiff's complaint alleges racially-motivated employment discrimination actionable under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., stemming from the Delaware Capitol Police Department's refusal to promote him. (Id.) Plaintiff requests "[t]hat the Court grant such relief as may be appropriate, including injunctive orders, damages, cost[s] and attorney's fees." (Id. at 3) After the close of discovery, defendants filed a motion for summary judgment. (D.I. 42) The court has jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f). For the reasons stated below, defendants' motion for summary judgment is granted.

## II. BACKGROUND

At the time of the alleged discrimination, plaintiff was employed by the State of Delaware's Capital Police Department ("the Department") as a security guard. (D.I. 45 at 3) In March 2003, plaintiff applied for a job opening as a Capital Police Officer III ("CPO III");[1] had he received an offer for the job,

---

[1] As listed in the bulletin announcing the CPO III job opening, a "qualified" candidate was required to have the following:

it would have constituted a promotion from his position as a security guard. (D.I. 2 at 12) On March 14, 2003, the Senior Human Resources Technician for the Delaware Department of Public Safety, Angela Johnson, sent plaintiff a letter stating: "Your application has been evaluated and . . . we wish to notify you that you qualify for the position[] of [CPO III]. . . . You will be notified if a personal interview is to be scheduled." (<u>Id.</u>) Plaintiff was not offered an interview for the CPO III position and, on March 19, 2003, he resigned his position as a security guard in order to work as a Court Security Officer for a Justice of the Peace court. (D.I. 44 at A-5; D.I. 2 at 7)

---

1. Possession of a high school diploma or GED certificate.

2. Possession of a State of Delaware Council on Police Training ["COPT"] Certificate **or equivalent**.

3. A minimum of three years experience in law enforcement.

4. Knowledge of the methods and techniques of developing and presenting informational presentations and educational seminars.

5. Knowledge of the methods and techniques of court security.

6. Ability to communicate effectively.

(D.I. 2 at 13 (emphasis added); <u>see also</u> D.I. 46 at A-13) Plaintiff and defendants disagree about what constitutes the "equivalent" of a Delaware COPT certificate. (<u>See, e.g.</u>, D.I. 45 at 6-7)

2

While plaintiff's affidavit to the EEOC alleged that an African American officer told him that only white people were given interviews (D.I. 2 at 11),[2] defendants aver that the Department ultimately offered interviews to nine people (five of whom were white and four of whom were African American), though only five actually appeared for their scheduled interview times. (D.I. 44 at A-6)  Of the five candidates interviewed for the Capital Police Officer III position, 3 were white and 2 were African American.  (D.I. 43 at 10)  Ultimately, the Department hired a white applicant.  (D.I. 45 at 4)

At some point in time, defendants informed plaintiff that he was not actually qualified to work as a CPO III and that the March 14th letter had been sent in error.  Thereafter, plaintiff filed a claim of racial discrimination with the Delaware Department of Labor and the EEOC.[3]  (D.I. 2 at 8)  Plaintiff

---

[2]It is notable that the one time plaintiff's allegation (that only white candidates were interviewed) appears is in the EEOC affidavit attached to his complaint.  (D.I. 2 at 11)  From thereon after, plaintiff has based his discrimination charge on allegations that he was not offered an interview even though he qualified for one and that "two non-African American employees were treated more favorably than he."  (D.I. 45 at 7-8)  Because plaintiff has apparently abandoned this contention and the record lacks any evidence to the contrary, the court will disregard plaintiff's original allegation that only white candidates were interviewed for the CPO III position and accept defendants' averments as true in this regard.

[3]Plaintiff, who did not possess a State of Delaware COPT certificate, believed that his past work experience, especially his certification by the Pennsylvania Municipal Police Officers' Education and Training Commission (D.I. 2 at 5-6), was the

3

received a Notice of Right to Sue from the Civil Rights Division of the United States Department of Justice on June 23, 2004. (Id. at 4) Plaintiff filed this action less than 90 days later, as required by law. (Id.)

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R.

---

"equivalent" of a COPT certificate, which would qualify him for an interview under the second requirement listed in the CPO III job posting. (See, e.g., D.I. 45 at 6-7)

Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). With respect to summary judgment in discrimination cases, the court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." Revis v. Slocomb Indus., 814 F. Supp. 1209, 1215 (D. Del. 1993) (quoting Hankins v. Temple Univ., 829 F.2d 437, 440 (3d Cir. 1987)).

## IV. DISCUSSION

Discrimination claims under Title VII are analyzed under the burden-shifting framework set forth by the United States Supreme

5

Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[4] First, the plaintiff "must carry the initial burden under the statute of establishing a [prima facie] case of racial discrimination." Id. at 802. A plaintiff can accomplish this by proving that: (1) he is a member of a protected class; (2) he suffered some form of adverse employment action; and (3) this action occurred under circumstances that give rise to an inference of unlawful discrimination such as might occur when a similarly-situated person not of the protected class is treated differently. Boykins v. Lucent Techs., Inc., 78 F. Supp. 2d 402, 409 (E.D. Pa. 2000) (citing Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 410 (3d Cir. 1999)), aff'd, 29 Fed. App'x 100 (3rd Cir. 2002); see also Berry v. E.I. DuPont de Nemours & Co., 625 F. Supp. 1364, 1377 (D. Del. 1985) ("A plaintiff may establish a [prima facie] case of discrimination by showing that other similarly-situated employees of a different race were treated

---

[4] While the factors enunciated in McDonnell Douglas dealt specifically with employment cases that ended in termination, the Third Circuit has recognized that

> the elements of a prima facie case depend on the facts of a particular case. Thus, a prima facie case cannot be established on a one-size-fits-all basis. In fact, the relevant question . . . is whether [the plaintiff] suffered some form of "adverse employment action" sufficient to evoke the protection of Title VII.

Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 411 (3d Cir. 1999) (internal citations omitted). As such, "something less than a discharge could be an adverse employment action." Id.

6

differently from the plaintiff."). Once the plaintiff has established a prima facie case of racial discrimination, "the burden shifts to the [employer] 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" Jones, 198 F.3d at 410 (quoting McDonnell Douglas, 411 U.S. at 802). "Finally, should the [employer] carry this burden, the plaintiff then must have an opportunity to prove by preponderance of the evidence that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination." Id. at 410 (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981)). Throughout the court's analysis, "[t]he ultimate burden of persuading the trier of fact that the [employer] intentionally discriminated against the plaintiff remains at all times with the plaintiff." Id. (citing Burdine, 450 U.S. at 253) (first alteration in original).

Plaintiff takes issue with the fact that the Department did not offer him an interview for the CPO III job opening, even though he had received a letter stating that he was qualified for the position.[5] Plaintiff's complaint states that he is suing defendants for "failure to employ" him (D.I. 2 at 2); however, the fact that the Department ultimately hired a white applicant

---

[5]According to plaintiff, he "voluntarily resigned his position with the Capitol Police as a result of the application review process and being denied an interview after being told he was qualified." (D.I. 45 at 4)

7

is irrelevant to the matter at bar, since plaintiff (assuming, arguendo, that he was qualified) had no right to be hired for the job simply because he is African American.  The issue, instead, is whether plaintiff was wrongfully denied an interview.

Plaintiff is unquestionably a member of a protected class, and defendants' refusal to allow him to interview for a promotion to CPO III constitutes an adverse employment action.  Therefore, plaintiff's ability to make a prima facie showing of racial discrimination depends on whether he can show that the Department granted interviews to similarly-situated applicants of a different race while denying one to plaintiff and labeling him "unqualified."

The only CPO III job requirement in dispute in the case at bar is whether plaintiff's prior experience in security work and law enforcement, as well as his prior police certification by the State of Pennsylvania, qualify as the "equivalent" to a Delaware COPT certificate.  The Department avers that the March 14th letter it sent plaintiff was in error when it stated that he was qualified for an interview:  while plaintiff's certification from the State of Pennsylvania would normally constitute the equivalent of a Delaware COPT certificate[6] (which is why the

---

[6]According to Captain David Hunt, who was involved in determining which CPO III candidates qualified for an interview, "The 'or equivalent' [language in the qualification requirements] is a reference to out of state certifications, individuals who have reached police certification in another []state."  (D.I. 44

8

letter was originally sent), upon closer examination, the Department realized that plaintiff had not been a certified member of a state police force since 1995.[7] (D.I. 44 at A-11)

According to Captain Hunt's understanding of COPT rules, "potential employees who have not worked as a police officer for over five years are expected to attend the full [Delaware Police] [A]cademy due to diminished skills and changes in procedure and law."[8] (Id. at A-7) Captain Hunt testified that "[w]e look at an individual, once they stop working for a police agency, in the capacity of police officer. That is the expiration date of that, and we run the [five year] calendar from that." (Id. at A-14) Taja Jones, an employee responsible for verifying that CPO III applicants met the minimum job requirements, stated that when she and Angela Johnson (the woman who sent the March 14th letter to

---

at A-8)

[7] Plaintiff listed his prior work experience in his response to defendants' interrogatories: From 2001-2002, he was a security officer for Lockheed Martin; from 1999-2001, he held a job with the security police at a Naval Support Center; and from 1985-1995, he was a police officer with the Philadelphia Housing Authority. (D.I. 18 at ¶ 8)

[8] Plaintiff contends, and the record verifies, that this limitation was not listed in any of the written materials detailing the requirements for a CPO III job. (D.I. 45 at 7) Irregardless, plaintiff has not produced any evidence that the Department failed to apply this unwritten requirement to job candidates of other races who, like plaintiff, had not been police officers for more than five years; similarly, the record reveals no evidence that Captain Hunt simply concocted the five year requirement in order to justify his decision to deny plaintiff an interview.

9

plaintiff) "rated [his] application, we were just basing it on what the application had itself, which was saying he was in law enforcement over three years. He had the training and knowledge for X amount of years." (Id. at A-20)  In her deposition, Jones agreed that she "[was] not familiar with the eligibility requirements regarding how long someone has been off a police force" because "[t]he fact that a particular applicant may not be qualified because they have been off of a certified police force for too long is not an issue that comes up very often." (Id. at A-20 to A-21)

Plaintiff likewise contends that, under 11 Del. C. § 8404(a)(18),[9] his job "as an officer, [with] a company contracted by the Navy to provide public services for the Philadelphia Naval Support Center" means that he has been employed by a police agency within the last five years. (D.I. 45 at 6)  "In that position," plaintiff avers, "he was required to maintain his police training and firearms qualifications." (Id.)  Plaintiff believes that defendants should have "afforded [him] the opportunity to provide this information to rebut or explain

---

[9]This statute grants the Delaware COPT the power to "[e]stablish the criteria to afford reciprocity to police officers **certified in other states by . . . the federal government** by waiving some or all of the minimum education and training qualifications for [Delaware] police officers . . . if they have satisfied substantially equivalent education and training."  11 Del. C. § 8404(a)(18) (emphasis added).

10

[defendants'] unilateral determination of his lack of qualification." (Id. at 6-7)

Section 8404 of Title 11 applies only to "police officers"; section 8401 of the same title states that, "for purposes of this chapter," the term "police officer" "shall not include . . . [a] security force for a state agency or other governmental unit; or . . . [a] person holding police power by virtue of occupying any other position or office" not specifically listed in the section. 11 Del. C. § 8401(5)(b). Plaintiff's interrogatory answers state that his job at the Naval Support Center was with the "security police." His job with Lockheed Martin, although it required him to work on a federal Naval Base, was as a "security officer."

Section 8401 specifically excludes security guards from its definition of the term "police officer"; therefore, plaintiff's security work does not qualify him for reciprocity under § 8404. Because plaintiff's prior jobs do not qualify as employment with a police agency within the last five years, he is not qualified for a CPO III position under COPT standards and it was not improper for defendants to deny him an interview. Consequently, in order to survive defendants' motion for summary judgment, plaintiff will have to show that defendants granted an interview

11

to a person of another race despite the fact that he or she was unqualified to be a CPO III.[10]

In support of his differential treatment argument, plaintiff states that Scott Walker and Thomas DeVore, "two non-African American employees[,] were treated more favorably than he."[11] (D.I. 45 at 8) Thomas DeVore ("DeVore"), a white male who was working for the Fenwick Island Police Department and attending the Delaware Police Academy, applied for a CPO II position with the Department in March 2003. (D.I. 46 at A-14 to A-19) Although the record is not entirely clear on this point, it appears to the court that DeVore's application was rejected because he did not have "[k]nowledge of the principles and practices of training," a requirement for CPO II applicants.

---

[10] In response to defendants' query asking him to identify "others, not in your protected class, [who] were treated more favorably than you by Defendant," plaintiff listed only one name, Darrell Harvey, whom he claims "was hired and he was not qualified for the position." (D.I. 18 at ¶ 12) A careful inspection of the record reveals no other mention of anyone named Darrell Harvey. The court also notes that, while plaintiff's answering brief to defendants' motion for summary judgment cites to "Defendant's Answers to Interrogatories" (see D.I. 45 at 8), plaintiff has not included such answers in his briefs or appendices; since these answers are not in the record, the court cannot consider them in its analysis.

[11] Other than stating that Scott Walker was hired as a CPO III and that "[d]efendants were unable to produce Scott Walker's application and resume, as it may have been destroyed" (D.I. 45 at 8), plaintiff proffers no evidence that Walker was somehow unqualified for the position or was treated more favorably than plaintiff. Therefore, the court's differential treatment analysis will focus solely on Thomas DeVore.

(Id. at A-20)  Despite his disqualification to be a CPO II, the Department sent DeVore a letter on March 14, 2003, stating, "[Y]ou qualify for the position[] of [CPO I[12]]. . . . Your name will remain on the register until 03-05-2004.  You will be notified if a personal interview is scheduled."  (Id. at A-22)

DeVore was hired as a CPO III in June 2003; according to plaintiff, "[c]learly if [DeVore] was not qualified to be a [CPO] II, he is not qualified for the higher [CPO] III position, and yet four months after applying and being determined unqualified, he was given that position."  (D.I. 45 at 8)  Defendants respond:

> [The] letter indicating [DeVore] was not qualified for a position as Police Officer II [(D.I. 46 at A-21)] . . . . . was sent in error.  In the same manner, the Plaintiff received a letter indicating he was qualified for the Position of Police Officer III when he was not. Mistakes made by the Employer do not in and of themselves rise to the level of discrimination.

(D.I. 47 at 9)  DeVore was hired as a CPO III, defendants contend, because "[he] was qualified for the position . . . and the Plaintiff was not."  (Id. at 8)  Defendants highlight the differences between the two men:

> Thomas DeVore possessed an out-of-state certification, just like the Plaintiff.  [(D.I. 46 at A-17)]  Unlike the Plaintiff, Thomas DeVore had worked as a certified

---

[12]A CPO I, who is two levels in rank beneath a CPO III, must have a high school diploma or GED; "a State of Delaware [COPT] certificate or equivalent"; and the "[a]bility to communicate effectively."  (D.I. 46 at A-23)  Because DeVore met all three requirements (including certification from the State of New Jersey (id. at A-17)), the Department found that he was qualified to be a CPO I.  (Id. at A-23)

13

>officer in the five years preceding his application for the position of Police Officer III.  [(<u>Id.</u> at A-15)] [He] was working as a certified police officer with the Fenwick Island Police Department at the time of his application.  [(<u>Id.</u>)]  The Plaintiff was working as a security guard in the five years preceding his application.  [DeVore] was attending the Delaware Police Academy in an attempt to obtain a Delaware certification at the time of his application.  [<u>Id.</u> at A-15, A-17)]  The Plaintiff never enrolled in the Delaware Police Academy in an attempt to become certified in Delaware.  Finally, [DeVore] obtained his Delaware certification from the Delaware Police Academy on May 13, 2003, before he was awarded the position of Police Officer III.

(D.I. 47 at 9)

Other than the letter stating that DeVore was not qualified for a CPO II position in March 2003, plaintiff has not produced any evidence which indicates that he and DeVore were similarly-situated at the time they each applied to be a CPO III.  While DeVore may not have been fully qualified in March 2003, he was working as a police officer and was enrolled in the Delaware Police Academy.  By the time DeVore became a CPO III, he had received his Delaware certification and had worked as a police officer within the previous five years; plaintiff had done neither of these things when he was rejected for a CPO III interview.

Plaintiff is unable to show that he and DeVore were similarly-situated at the respective times they applied for a CPO III position; therefore, he cannot make a prima facie showing of racial discrimination on the part of defendants.  Viewing all of

14

the facts and inferences in a light most favorable to plaintiff, the court finds that he has produced "[in]sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff," Revis v. Slocomb Indus., 814 F. Supp. 1209, 1215 (D. Del. 1993), and grants defendants' motion for summary judgment.

## V. CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is granted. An appropriate order shall issue.